AO 91 (REV.5/85) Criminal Complaint                                    AUSA Peter S. Salib (312) 697-4092

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**FILED**

APR X 7 2011  JN

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

JOSE MARINELARENA  and
JUAN RODRIGUEZ

**CRIMINAL COMPLAINT**

CASE NUMBER:  MAGISTRATE JUDGE GILBERT

## 11CR 0272

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief: From on or about April 4, 2011 to on or about April 5, 2011, at Chicago, in the Northern District of Illinois, Eastern Division JOSE MARINELARENA and  JUAN RODRIGUEZ defendants herein:

> knowingly conspired with each other, and with others, to possess with the intent to distribute a controlled substance, namely one kilogram or more of mixtures containing heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1);

In violation of Title 21, United States Code, Section 846. I further state that I am a Task Force Officer with the Drug Enforcement Administration, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

_____
Signature of Complainant
Robert Vaughan
Task Force Officer, Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

April 7, 2011        2:40 p.m.                    at  Chicago, Illinois
Date                                                   City and State

_____
JEFFREY T. GILBERT, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

UNITED STATES DISTRICT COURT )
) ss
NORTHERN DISTRICT OF ILLINOIS )

## AFFIDAVIT

I, Robert Vaughan, being duly sworn, state as follows:

1.      I am a Task Force Officer with the Drug Enforcement Administration (DEA), and have been so employed for three years. Prior to that, I was a narcotics investigator with the High Intensity Drug Trafficking Area (HIDTA) task force for three years investigating narcotics trafficking offenses. My current responsibilities also include the investigation of narcotics trafficking offenses.

2.      My official DEA duties include investigating criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846 and 848. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. I have worked in several investigations involving various types of electronic surveillance, including the interception of wire communications, the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, the laundering and concealing of proceeds from drug trafficking and the street gangs who participate in these illegal activities.

3.      I am familiar with the facts and information contained in this affidavit from my own personal observations, witness interviews, surveillance, review of video

1

surveillance, analysis and review of documents and records, and discussions with other law enforcement agents and officers involved in this investigation. Because this affidavit is submitted solely for the purpose of establishing probable cause in support of a criminal complaint, the information contained herein is described in summary form and is not every fact known to me regarding this investigation. Where statements of others are set forth in this affidavit, they are set forth in substance and in part, and are not verbatim. Statements from recorded conversations do not include all statements or topics covered during the course of the recorded conversation, and are not taken from a final transcript.[1]

4.      This affidavit is submitted in support of a criminal complaint alleging that JOSE MARINELARENA and JUAN RODRIGUEZ have violated Title 21, United States Code, Section 846. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging MARINELARENA and RODRIGUEZ with conspiracy to possess with intent to distribute one kilogram or more of mixtures and substances containing heroin, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

---

[1] The words included with quotation marks are based on summaries, and not final transcript. At various points in the affidavit, I will set forth my understanding of coded words and phrases used during the recorded conversations. My understanding of these coded words and phrases is based on my training and experience, my knowledge of this investigation as a whole, and information provided by the confidential sources described herein.

5.     This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and my review of recorded conversations and meetings.

## CONFIDENTIAL SOURCES

6.     Part of the information provided in this affidavit has been provided by two confidential sources ("CS-1" and "CS-2"). The CSs in this case have been providing information since approximately 2009.

7.     CS-1 and CS-2 have been arrested on numerous occasions. CS-1 has two prior felony convictions, one for distribution of cocaine in 1993 and one for distribution of cocaine in 1995. CS-2 has a felony conviction for bank robbery in 2004. CS-1 and CS-2 have previously been paid by the Cook County Sheriff's Department for their cooperation in the past. CS-1 and CS-2 are currently cooperating in hopes that their efforts could lead to a reduced sentence for an individual currently charged in this district.

8.     Based on law enforcement's experience and interactions with CS-1 and CS-2, the information has been deemed reliable. Among other things, the information the CSs have provided to law enforcement regarding their telephonic and in-person conversations with the targets of the investigation has been corroborated through surveillance and the electronic recordings of some of those conversations.

## INVESTIGATION

9.      In debriefings with CS-1, CS-1 told law enforcement that CS-1 had previously discussed purchasing heroin from a Hispanic male later identified as MARINELARENA.

10.      On or about March 31, 2011, CS-1 and CS-2 went to a S&M Grill and Bar located at 3141 W. 63rd Street in Chicago. This meeting was not recorded. According to CS-1 and CS-2, while inside the bar, CS-1 and CS-2 spoke to MARINELARENA. MARINELARENA told CS-1 and CS-2 that he was the owner of the bar. CS-1 and CS-2 told MARINELARENA that they were ready to purchase two kilograms of the heroin. Discussions took place between CS-1 and CS-2 regarding the price of the kilogram of heroin, varying from $55,000 to $60,000 per kilogram. Ultimately, MARINELARENA and CS-1 and CS-2 agreed to a sale of two kilograms of heroin for $60,000 per kilogram. MARINELARENA gave CS-1 and CS-2 his phone number of (773) 349-5260 as the way in which CS-1 and CS-2 could contact MARINELARENA to finalize the transaction. MARINELARENA agreed that the purchase would take place on Monday, April 4, 2011 at 87th and Western Avenue in Chicago, Illinois.

11.      Following this meeting, CS-2 was shown a photograph of MARINELARENA and positively identified him as the Hispanic male in the S&M Bar whom CS-2 spoke to. Additionally, CS-1 identified MARINELARENA as the person CS-1 discussed purchasing heroin from.

4

12.     On or about April 4, 2011, at approximately 9:00 a.m., CS-1 received a telephone call on his/her cell phone from (773) 349-5260. The person calling identified himself as MARINELARENA. This call was recorded. MARINELARENA agreed to meet CS-1 and CS-2 at 87th Street and Western Avenue in Chicago at noon. Thereafter, CS-1 and MARINELARENA spoke several times over phone number (773) 349-5260. These phone calls were recorded. MARINELARENA asked CS-1, in summary, if CS-1 was ready and if CS-1 had the money for the purchase. MARINELEARENA told CS-1 that he would be ready at noon.

13.     On or about April 4, 2011, law enforcement established surveillance in the vicinity of 87th Street and Western Avenue. At approximately 12:00 p.m., MARINELARENA arrived to this location in a white pickup truck and pulled next to the vehicle in which CS-1 and CS-2 were seated. This meeting was audio recorded by both CS-1 and CS-2 who were wearing recording devices. The vehicle in which CS-1 and CS-2 were located was also equipped with a recording device. MARINELARENA stated, in summary, that he was ready for the transaction but needed 20 minutes to obtain the heroin. MARINELARENA stated that "the stuff is really good," meaning the quality of the heroin was very good. Law enforcement observed MARINELARENA leave the scene. At approximately 2:00 p.m., CS-1 called MARINELARENA at (773) 349-5260. This call was recorded. During the call, MARINELARENA stated, in summary, that he needed another 20 minutes to obtain the heroin. MARINELARENA did not return to meet CS-1 and CS-2

5

at any point that day and CS-1 was unable to reach MARINELARENA by phone for the remainder of the day.

### EVENTS OF APRIL 5, 2011

14.      On or about April 5, 2011, at approximately 12:00 p.m. MARINELARENA called CS-1 on (773) 349-5260. This call was not recorded. According to CS-1, MARINELARENA asked CS-1 if CS-1 would meet him at 87th Street and Western Avenue in Chicago at approximately 3:00 p.m. CS-1 agreed to do so.

15.      Law enforcement established surveillance in the area of 87th Street and Western Avenue. At approximately 3:00 p.m., agents observed CS-1 waiting in his/her vehicle at 87th Street and Western Avenue and observed MARINELARENA arrive in a red pickup truck. This meeting was not recorded. According to CS-1, MARINELARENA told CS-1, in summary, that he would be ready for the transaction in two hours. CS-1 told MARINELARENA that CS-1 would pick up CS-2 who would have the money for the purchase. Law enforcement observed MARINELARENA leave the area.

16.      At approximately 4:30 p.m., MARINELARENA telephoned CS-1 using (773) 349-5260. This call was recorded. MARINELARENA stated, in summary, that the heroin transaction would take place at a gas station located at the intersection of 36th Street and Kedzie Avenue at approximately 5:30 p.m. Prior to the meeting, CS-1 and CS-2 were searched for drugs, contraband and money with negative results. Law enforcement also searched the vehicle CS-1 and CS-2 would drive to the transaction ("CSV") with negative

results. The CSV was also equipped with a recording device. CS-1 was equipped with an audio recording device and a transmitter. CS-2 was equipped with an audio and a video recording device.

17. At approximately 4:30 p.m., law enforcement observed CS-1 and CS-2 park the CSV at a gas station near 36th Street and Kedzie Avenue in Chicago. CS-1 was in the driver's seat and CS-2 was in the passenger seat. At approximately 6:00 p.m., MARINELARENA called CS-1 using (773) 349-5260. This call was recorded. MARINELARENA asked where CS-1 was. CS-1 replied, in summary, that CS-1 and CS-2 were located at the gas station at the intersection of Kedzie Avenue and 36th Street. MARINELARENA told CS-1 that CS-1 and CS-2 were supposed to be at California Avenue and 36th Street. Law enforcement maintained surveillance on the CSV as CS-1 drove the vehicle to a gas station located in between 35th Place and 36th Street on California Avenue.

18. At approximately 6:10 p.m., agents observed MARINELARENA approach the CSV and engage CS-1 and CS-2 in conversation. This meeting was recorded. MARINELARENA asked CS-1, in summary, to show him the money for the transaction. CS-2 stated, in summary, that s/he had the money but would need to see the narcotics. Shortly thereafter, agents observed MARINELARENA walk away from the CSV southbound on California Avenue. Law enforcement then observed MARINELARENA again approach the CSV and enter the backseat of the vehicle. A few minutes later, MARINELARENA again exited the vehicle and walked southbound into the alley near the gas station.

7

19.     At approximately 6:15 p.m. agents observed MARINELARENA and an unknown Hispanic male, later identified as RODRIGUEZ, approach and enter the CSV. This meeting was recorded. During this portion of the meeting, MARINELARENA, RODRIGUEZ, CS-1 and CS-2 discussed whether MARINELARENA and RODRIGUEZ, could show CS-1 and CS-2 the heroin before CS-1 and CS-2 provided the money. At approximately 6:20 p.m., agents observed MARINELARENA and RODRIGUEZ exit the CSV and walk down the alley. Shortly thereafter CS-1 called MARINELARENA on (773) 349-5260, and stated, in summary, that the heroin should be brought to the CSV. Around this time, law enforcement observed MARINELARENA enter a red pickup truck and drive eastbound on 35th Place.

20.     At approximately 6:25 p.m., agents observed RODRIGUEZ walk out of the alley and enter the CSV. This meeting was recorded. RODRIGUEZ stated, in summary, that in order to complete the transaction, the CSV would have to move into the alley out of open view. While seated in the CSV, RODRIGUEZ showed CS-1 and CS-2 a clear vacuum-sealed bag containing an off-white powder, which RODRIGUEZ stated was "200," meaning 200 grams of heroin. RODRIGUEZ stated he had "four more," meaning four more packages of heroin at 200 grams per package, for a total of one kilogram of heroin.

21.     CS-2 stated that he needed to see the whole "brick," meaning all of heroin, so that CS-2 would not be robbed of the $60,000. CS-2 stated, in summary, that the transaction was supposed to be for two kilograms of heroin and RODRIGUEZ responded,

8

in summary, that he only had one kilogram of heroin but that if CS-2 wanted more, then RODRIGUEZ could provide more at a later date. CS-2 reiterated that s/he needed to see the entire kilogram of heroin. RODRIGUEZ stated that the heroin was broken down into five different bags. Thereafter, law enforcement observed RODRIGUEZ exit the CSV and walk down the alley out of view of surveillance. During this meeting, law enforcement observed MARINELARENA circling the block in the red pickup truck.

22. At approximately 6:30 p.m. CS-1 repositioned the CSV in the parking lot of the gas station. Thereafter, law enforcement observed INDIVIDUAL A enter the CSV with RODRIGUEZ, after which the CSV moved back to 35th Place. This meeting was recorded. Once in the CSV, RODRIGUEZ removed five clear vacuum-sealed packages from his coat pocket and placed them on the floor of the backseat of the CSV. CS-2 told RODRIGUEZ that CS-2 had to retrieve some of the money for the purchase from the trunk of the CSV at which time the prearranged arrest signal was given.

23. Following in the arrests, law enforcement recovered the five packages delivered by RODRIGUEZ from the rear of the CSV. These packages were field tested and determined to each contain approximately 200 grams of heroin, for a total of approximately one kilogram.

24. Following RODRIGUEZ's arrest, he was advised of his Miranda rights and agreed to speak with law enforcement. RODRIGUEZ also consented in writing to a search of his apartment, which is located in the vicinity of the transaction at 2744 West

9

36th Street, in the basement apartment. During the search of the apartment, law enforcement recovered approximately 67 grams of heroin and approximately eight pounds of marijuana in the kitchen, as well as approximately $2,200 in cash. RODRIGUEZ told law enforcement, in summary, that MARINELARENA had brought heroin to RODRIGUEZ'S apartment earlier that day and asked RODRIGUEZ to assist in its delivery.

## CONCLUSION

25.     Based on the foregoing, your affiant submits that there is probable cause to believe that JOSE MARINELARENA and JUAN RODRIGUEZ conspired to possess with intent to distribute one kilogram or more of mixtures and substances containing heroin, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

FURTHER AFFIANT SAYETH NOT.

Robert Vaughan
Task Force Officer, Drug Enforcement
Administration

SUBSCRIBED AND SWORN to before me on
April 7, 2011.

JEFFREY T. GILBERT
United States Magistrate Judge

10